Submitted on briefs September 20, affirmed November 15, 1927.

# CHAS. H. CASTO *v.* C. P. HANSEN AND FRANK BENTLEY.

(261 Pac. 428.)

**Evidence—Motorcyclist's Testimony That He Slowed to "About" Speed Limit at Intersection was not Equivalent to Admission That He was Exceeding Speed Limit (Laws 1925, p. 160, § 2).**

1. In action by motorcyclist for damages resulting from collision with automobile, motorcyclist's testimony that, as he approached intersection with primary highway, he slowed to "about 5 miles an hour," was not equivalent to an admission that he was traveling in excess of five miles per hour, in violation of Laws of 1925, page 160, Section 2; word "about" meaning nearly or approximately.

**Highways—Motorcyclist must Use Ordinary Care in Looking Out and Giving Right of Way at Intersection (Laws 1921, p. 710, § 2, subd. 7).**

2. Conduct of motorcyclist, entering primary highway, in looking out for and giving right of way to automobiles approaching intersection from his right, as required by Laws of 1921, page 710, Section 2, subdivision 7, must be measured by degree of care which an ordinarily prudent person would have exercised under same circum-

stances, since law cannot establish any arbitrary standard in such matters.

Highways—That Motorcyclist Looked at Intersection, and Did not See Automobile, Did not as Matter of Law Convict Him of Negligence (Laws 1921, p. 710, § 2, subd. 7).

3. That motorcyclist, approaching highway intersection, looked and did not see automobile approaching from his right, did not as matter of law convict him of negligence, under Laws of 1921, page 710, Section 2, subdivision 7.

Highways—Motorcyclist, Approaching Intersection, had Right to Proceed if There was No Reasonable Apprehension of Danger from Automobile Approaching from Right (Laws 1921, p. 710, § 2, subd. 7).

4. Under Laws of 1921, page 710, Section 2, subdivision 7, motorcyclist, approaching highway intersection, had right to proceed if there was no reasonable apprehension of danger, in view of rate of speed and distance of automobile approaching from right; but he would not be warranted in taking close chance and doubt should be resolved in favor of one having right of precedence.

Highways—Whether Motorcyclist, Crossing Intersection, When Seeing Automobile Approaching from Right, Exercised Due Care, is Ordinarily for Jury (Laws 1921, p. 710, § 2, subd. 7).

5. Under Laws of 1921, page 710, Section 2, subdivision 7, question whether motorcyclist, crossing intersection after seeing automobile approaching from right, exercised due care, is ordinarily a question of fact for jury.

Highways—Statute Giving One, Approaching Intersection from Right, Right of Way, Does not Give Anyone Exclusive Right of Way (Laws 1921, p. 710, § 2, subd. 7).

6. Laws of 1921, page 710, Section 2, subdivision 7, giving vehicles, approaching intersection from right, the right of way, does not contemplate that any person should have an exclusive or absolute right of way, but those using highways must have due regard to rights of others, and construction given statute should be compatible with reason, common sense, and practicability, and motorist had no right to go through intersection at high rate of speed under claim of right of way, and run down motorcyclist entering highway from left.

Highways—Contributory Negligence of Motorist Struck by Automobile Approaching from Right Held for Jury (Laws 1925, p. 160, § 2; Laws 1921, p. 710, § 2, subd. 7).

7. Under Laws of 1925, page 160, Section 2, Laws of 1921, page 710, Section 2, subdivision 7, contributory negligence of motorcyclist,

---

6. Right of way at street or highway intersection, see notes in 21 A. L. R. 974; 37 A. L. R. 493.
7. See 20 R. C. L. 166.

entering primary highway and making left-hand turn, and struck by automobile approaching from his right, *held* for jury.

About, 1 C. J., p. 334, n. 7, 8.
Courts, 15 C. J., p. 954, n. 88, p. 957, n. 19, 20.
Motor Vehicles, 42 C. J., p. 878, n. 71, p. 976, n. 13 New, p. 977, n. 27, p. 978, n. 33, 35, 36, p. 979, n. 40, 42, p. 982, n. 69, p. 985, n. 82, 83, 84, 85, 86, p. 986, n. 89, 90, 91, 93, 94, p. 988, n. 14, p. 989, n. 21, 24, 25, p. 1250, n. 99, p. 1261, n. 38, p. 1264, n. 74, p. 1276, n. 10.
Negligence, 29 Cyc., p. 640, n. 13.

From Marion: PERCY R. KELLY, Judge.

In Banc.

AFFIRMED.

For appellants there was a brief over the name of *Mr. James L. Conley.*

For respondent there was a brief over the names of *Mr. Virgil H. Massey* and *Mr. Guy O. Smith.*

BELT, J.—This is an action to recover damages resulting from a collision between an automobile and a motorcycle, near the City of Woodburn, on the Pacific Highway, at a point where it is intersected by Hardcastle Avenue. Plaintiff had a verdict and defendants appeal, assigning as error the failure of the court to allow motion for nonsuit. It is their contention that, as a matter of law, plaintiff was guilty of contributory negligence in entering this primary highway in excess of five miles per hour, and by reason of his alleged failure, when approaching the intersection, to give right of way to automobile driven by the defendant, Bentley.

On July 15, 1926, at about 7:30 in the evening, plaintiff was riding a motorcycle in an easterly direction on Hardcastle Avenue. He testifies that, as he approached the intersection, he "slowed to about five

miles an hour," and when within thirty-five or forty feet of it, looked to the right and saw no automobile approaching from the south. Plaintiff says that he drove into the intersection, keeping to the right and around the center thereof, and turned to the left, proceeding north towards the City of Portland. He says that, after he had made the turn and reached a point about eight or nine feet beyond the intersection, his motorcycle was struck in the rear by the automobile traveling in the same direction. The pavement was dry and there was evidence that the automobile skidded for a distance of forty-five feet prior to striking him. It also appears that, after being struck, plaintiff was thrown into a ditch ninety-six feet distant. The highway at place of collision is straight for a considerable distance and there were no obstructions to plaintiff's view as he drove into the intersection. Defendant Bentley testified that when he first saw plaintiff the latter was twenty-five or thirty feet west of the intersection and he was fifty feet south thereof. Can we say, as a matter of law, that plaintiff was guilty of contributory negligence?

1. At the time this accident occurred, under Section 2 of Chapter 104, Laws of Oregon for 1925, plaintiff was obliged to enter this primary highway at a rate of speed not in excess of five miles per hour. We are unable to say from the testimony of plaintiff that he violated the law in this respect. "About five miles an hour" might well mean either less or more than the rate of speed stated. The word "about" means "nearly" or "approximately": Words and Phrases, Volume 1, page 13. This indefinite estimate of speed is not equivalent to an admission that plaintiff was traveling in excess of five miles per hour. The law has now been amended to require a vehicle entering a

primary highway to come to a complete stop: Chapter 377, Laws of Oregon for 1927.

2–4. Subdivision 7 of Section 2, Chapter 371, Laws of Oregon for 1921, provides:

"Drivers, when approaching highway intersections, shall look out for and give right of way to vehicles on their right, simultaneously approaching a given point; * * ."

Does the testimony of plaintiff show that he complied with this statutory obligation to "look out for and give right of way" to automobiles approaching the intersection from his right? We cannot say at what place he should have looked nor that he should thereafter have fixed his gaze constantly in the same direction: *Kirby* v. *Southern Pacific Co.*, 108 Or. 290 (216 Pac. 735). His conduct in this respect must be measured by the degree of care which an ordinarily prudent person would have exercised under the same circumstances. The law cannot establish any arbitrary standard in such matters. The fact that he looked and did not see the automobile approaching does not, as a matter of law, convict him of negligence, although it might be a sufficient reason for a jury to do so. When he approached the intersection, he was called upon, in the light of all the facts and circumstances as they would have appeared to a person of ordinary caution and prudence, to determine whether he could cross it with a reasonable degree of safety. If there was no reasonable apprehension of danger, in view of the rate of speed and distance of the automobile approaching from the right, the plaintiff had the right to proceed. Under the statute, he would not be warranted in taking a close chance. The doubt should be resolved in favor of the one having the right of precedence. "He died con-

testing the right of way" should be no man's epitaph.

This rule of traffic has no application where the intersection is approached at such time that a person in the exercise of due care would be led to the reasonable belief that he could pass with safety in front of a vehicle approaching from his right.

5. Assuming that plaintiff had seen the automobile when he looked, it does not necessarily follow that he had no right to cross the intersection: *Rupp* v. *Keebler,* 175 Ill. App. 619; *Minnis* v. *Lemp* (Mo. App.), 226 S. W. 999; *Brown* v. *Chambers,* 65 Pa. St. 373. Ordinarily, whether due care was exercised in this regard would be a question of fact for the jury.

6. It is not contemplated by the statute that any person should have an exclusive or absolute right of way: *Paulson* v. *Klinge,* 92 N. J. Law, 99 (104 Atl. 95). See numerous authorities listed in exhaustive notes in 21 A. L. R. 974 and 47 A. L. R. 595. Those using the highways must have due regard for the rights of others. As stated by Mr. Justice CARDOZA in *Ward* v. *Clark,* 232 N. Y. 195 (133 N. E. 443):

"The privilege thus conferred is not inflexible and absolute. A right of way, like a burden of proof, will establish precedence when rights might otherwise be balanced. It helps us little when without it the balance would be unequal. A right of way might turn the scales if, when the plaintiff started to cross, the cars had been equidistant, or nearly so, from the point of collision, due regard being had also for the speed of their approach. Even with the distances what they were, it was an element which the triers of the facts were to consider in their estimate of conduct."

The construction given the statute should be compatible with reason, common sense and practicability.

It certainly does not mean that a driver on the left at an intersection must wait until an automobile approaching from the right shall have passed even though he could proceed without any reasonable apprehension of danger. In these days of traffic congestion, especially on the streets of large cities, any other construction of the statutory traffic rule would lead to immeasurable difficulty and confusion.

We are mindful that what has been said here cannot be reconciled with *Ramp* v. *Osborne,* 115 Or. 672 (239 Pac. 112) and in so far as that decision is in conflict herewith, it is expressly overruled. It is deemed better to attempt to secure certainty in the law than to undertake to distinguish cases wherein there is no material difference in facts. The following instruction in the Ramp case was, in our opinion, erroneously held to be defective:

"The right of precedence at an intersection of two highways given by law has no proper application except where the travelers or vehicles on the intersecting highways approach the crossing so nearly at the same time and at such rates of speed that if both proceeded, each without regard to the other, a collision or interference between them is to be reasonably apprehended. In such case it is the right of the one having the precedence to continue his course, and it is the duty of the other to yield to him the right of way. But if a traveler not having such right of precedence comes to the crossing and finds no one approaching it upon the other highway within such distance as to reasonably indicate danger of interference or collision, he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right."

The above instruction given *verbatim,* was approved by this court in *Johnson* v. *Underwood et al.,*

102 Or. 680 (203 Pac. 879). It was also given and approved in *Barnes* v. *Barnett,* 184 Iowa, 936 (169 N. W. 365), and in *Grant* v. *Marshall* (Del.), 121 Atl. 664. Also see Berry on Automobiles (5 ed.), § 208. As said in Huddy on Automobiles (7 ed.), Section 311:

"If a traveler, not having such right of precedence, comes to the crossing and finds no one approaching it upon the other street within such distance as reasonably to indicate danger of interference or collision, he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right." Citing many authorities in support of the text.

7. It is fair to infer from the testimony relative to skid marks on the pavement and the distance which plaintiff was thrown that the defendant Bentley was driving at breakneck speed. Under the claim of right of way, the driver of the automobile had no right thus to go through an intersection and run down plaintiff who, at that time, was traveling eight or nine miles per hour, and who the jury believed was exercising due care. We see no reason in this case to depart from the ordinary rule that contributory negligence is a question of fact for the jury to determine.

The judgment is affirmed.        AFFIRMED.

COSHOW, J., concurs in the result.