Argued March 5; affirmed April 1, 1930

## KNOX v. ABRAMS

(286 P. 517)

*James L. Conley* of Portland (Wm. G. Dunlap and A. G. Fletcher, both of Portland, on the brief) for appellant.

*Harry E. Collier* of Portland (Collier, Collier & Bernard, of Portland, on the brief) for respondent.

ROSSMAN, J.  For the purpose of disposing of the motion for a directed verdict we must deem that the following contentions, all being supported by substantial evidence, are the facts of this case. As the plaintiff approached the intersection of 39th and Knott streets from the south he brought his automobile almost to a stop a car's length from the intersection and shifted into intermediate gear; at the same time he looked to his right along the course of Knott street and observed the lights of the defendant's car approaching from the

right. At that time the defendant was approximately 260 feet from the intersection, and the plaintiff believed that he could cross Knott street in safety before the defendant would reach that point. He proceeded; when his car had reached a point not more than five feet north of the center line of Knott street it was struck by the defendant's car. The latter had endeavored to swerve its course to the north, but struck the plaintiff's car upon its right front corner. Testimony favorable to the plaintiff indicated that the speed of the defendant's car was approximately thirty-five miles per hour. The defendant practically concedes that in determining what disposition should be made of the motion for a directed verdict we must assume that the foregoing are the facts of the case; he contends, however, that the evidence conclusively shows that after the plaintiff looked to his right as he approached the intersection he paid no further attention to the traffic approaching from that direction until after his car had passed beyond the center line of Knott street. An examination of the plaintiff's testimony indicates that he again looked to his right before he reached the north half of Knott street and saw the defendant's car bearing down swiftly upon him; that he immediately applied his brakes, and that the collision occurred just as he passed into the north half of Knott street. Both streets are sixty feet wide.

The defendant contends that even though the above constitute the circumstances present at the time when the two cars approached the intersection he was entitled to the right of priority. 1927 Session Laws, ch. 217, § 1, subsec. 7(a) provides:

"Drivers, when approaching highway intersections, shall look out for and give right of way to vehicles on the right, simultaneously approaching a given point, whether such vehicle first enter and reach the intersec-

tion or not; provided, that street and interurban cars and emergency vehicles shall have the right of way at all times at such highway intersections.''

The defendant's interpretation of this section of our laws is set forth in the following requested instruction which he presented to the circuit court, and to which that court declined to subscribe.

''Of two automobiles simultaneously approaching a given point in a street intersection the one approaching from the right has the right of way regardless of which automobile first entered the intersection. By 'simultaneously approaching' is meant approaching at such speed and from such distances that they will reach the same spot at the same time. If you find, therefore, that the automobiles of plaintiff and defendant were simultaneously approaching the point where they later collided, you are instructed that plaintiff was guilty of negligence and that if such negligence contributed to and helped to cause the accident plaintiff can not recover and your verdict must be for defendant.''

It will be observed from a study of the defendant's requested instruction that under its terms the approach is simultaneous whenever two cars reach the point of intersection at the same time. Evidently he believes that the legislature used the word ''simultaneously'' as denoting synchronism. Under this requested instruction the approach of the two cars would be simultaneous in any of the following instances: (1) two cars are equally distant from the intersection and are proceeding at the same rate of speed; (2) the car to the right is twice as far from the intersection as the car to the left, but is proceeding twice as rapidly; (3) the car to the right is so far from the intersection and is proceeding at such a low rate of speed that it cannot reach the crossing point at the same time as the car to the left unless it greatly accelerates its speed; its operator,

noticing this fact, increases its speed sufficiently so that it reaches the intersection at the same moment as the other car; (4) the car to the right, after slowing down for the purpose of surrendering the right of way, resumes momentum and collides with the other. Since the defendant's requested instruction selects speed and distance as the determining factors, in all of the above instances the approach would be simultaneous. In fact the relative position of the two cars, if the defendant's theory is correct, is a matter of no consequence; if the the car to the right so adjusts its speed that it collides with the other, the approach would be simultaneous. Next, since the defendant's requested instruction determines the right to priority exclusively by the test of simultaneous approach, the car to the left in all of the above instances would be compelled to yield the right of way to the one to the right. If the defendant's interpretation of this section of our laws should prevail this enactment might well be rewritten to the effect that if two cars collide at a street intersection that fact shall be deemed conclusive proof that the car to the left was at fault. His construction of the statute would assign two positive duties to the disfavored car: (1) to maintain a lookout for cars to the right; (2) to yield to all cars to the right, with which it might come into collision, priority. And since the latter duty, under the defendant's interpretation, would be an absolute one, the statement of the first would be unnecessary except so far as it would caution drivers.

■ It is true that under statutes prescribing a positive duty the commission of the prohibited act constitutes the offense subjecting the individual to a penalty criminally, and that if the act inflicts injury upon some individual he may use it as the basis for establishing negligence in any ensuing action to collect damages; the

unlawful act in such instances becomes negligence per se. In such legislation the ignorance of the offending party that he is committing the prohibited act is immaterial. Hence it may be that the legislature in enacting this legislation intended that there should devolve upon the car to the left the positive duty to avoid collision with all cars upon the right. Further, it is possible that such a rule, due to its simplicity, would be productive of good in most instances. But statutes of this kind have never received such an interpretation by this court, and the proposed construction finds but scant support elsewhere.

██ This section of our motor vehicle act, it must be observed, is not the entire act; nor does it repeal the provisions of the common law, applicable to the operation of automobiles, which are not in conflict with it. The motor vehicle act, in addition to prescribing the duties above reviewed, also limits the rate of speed of an automobile as it approaches the intersection; the common law enjoins upon all motorists the constant exercise of due care, and places upon all the obligation *sic utere tuo ut alienum non laedas,* in other words the obligation of mutual forbearance. These duties are exacted of the favored car as well as of the other. As the car to the left approaches the future place of crossing and observes another to the right it may properly assume in the absence of evidence to the contrary that the latter will comply with the law. Hence, in determining whether the two will reach the crossing simultaneously, it has a right to take into consideration an assumption that the car to the right will itself comply with the law when it enters the intersection.

██ The decisions in *Casto v. Hansen,* 123 Or. 20 (261 P. 428); *Red Top Taxi Co. v. Cooper,* 123 Or. 610 (263 P. 64); *Gilman v. Olsen,* 125 Or. 1 (265 P. 439), and

*Stryker v. Hastie,* 131 Or. 282 (282 P. 1087), are directly opposed to the defendant's position; to these there could be added a wealth of authority from other jurisdictions. *Ramp v. Osborne,* 115 Or. 672 (239 P. 112), which lends some support to the defendant's contention, was expressly overruled in *Casto v. Hansen,* supra. The result of the aforementioned adjudications by this court is that in the performance of the statutory duty due care only need be exercised. Simultaneous is not construed in a strict sense; the courts have applied to this word, as well as to the entire section, a rule of construction guided by reason and common sense. In determining its meaning the courts have given consideration to the conditions sought to be remedied; if upon the car to the left was placed the absolute duty of keeping out of the way of the car to the right, the disfavored car and others approaching from the same direction might be so reluctant to proceed that they would congest traffic to the left and thereby cause more accidents and confusion than would be produced by going ahead. Indeed if the defendant's contention is correct, the car to the left would violate this section of the motor vehicle act if it failed to yield the right of priority to a car approaching from the right in the night time which it did not see, due to the failure of the latter to illuminate its lights. Hence, a simultaneous approach is construed as one which appears to be simultaneous after a reasonably careful observation has been made. Thus the duty placed upon the car to the left is somewhat similar to the one exacted of a traveler as he approaches a railroad crossing. It is true that the 1927 act is somewhat dissimilar from the statutes construed in our above decisions; it clarifies the rule by specifying that the fact that the car to the left has entered the intersection first is immaterial. This amendment is a matter of no conse-

quence in determining the correctness of the defendant's suggested interpretation. However, this change, together with the able manner in which the proposed interpretation has been argued, has caused us once more to consider carefully the interpretation of the act.

■ We adhere to the view expressed in *Casto v. Hansen,* supra, *Red Top Taxi Co. v. Cooper,* supra, *Gilman v. Olsen,* supra, and *Stryker v. Hastie,* supra, which may be restated thus: As the car to the left approaches the intersection three duties are exacted of its driver: (1) he must look alertly to his right in an endeavor to apprise himself of the presence of all cars approaching the intersection from that direction, their distance from the point of passage and their rates of speed. He is not required to look exclusively in that direction, but he is not justified in entering the intersection until he has performed this duty; as he proceeds the statute continues to demand that he give due attention to the traffic upon his right; (2) he must exercise the judgment of a reasonably prudent driver in determining whether he will collide with any car to his right if he continues his approach; (3) he must yield to all cars with which there is a reasonable likelihood of a collision the right to precedence; doubtful cases he should not contest.

It is evident that the degree of alertness to be exercised should be commensurate with the dangers apparent or reasonably to be apprehended. Weather conditions, obstructions to an adequate view, the quantity of traffic, the speed with which cars from the right approach the intersection; these and all other factors that are likely to assert themselves from time to time determine the degree of vigilance which the car to the left should exert as it approaches the intersection.

■ Having arrived at the above conclusions it necessarily follows that the motion for a directed verdict was properly denied.

We have carefully considered the instructions given to the jury by the circuit court judge. While we believe that the duty of the disfavored car might have been more clearly stated with profit to the jury, yet we do not believe that any reversible error is present.

The appellant's criticism of the instructions points out that the circuit court judge instructed the jury in regard to both the common law degree of care, and also in regard to the statutory duties exacted of a motorist, and contends that the court failed to state clearly that the latter prevailed over the former whenever the two were in conflict. Possibly that fact might have been more clearly enunciated, but we believe that the jury could have experienced no difficulty with this portion of the instructions.

Finding no reversible error in the record it follows that the judgment below must be affirmed.

COSHOW, C. J., and RAND, J., concur.

McBRIDE, J., took no part in this decision.