Argued October 9, affirmed November 6, 1957

# DOREY *v.* MYERS

317 P. 2d 515

632

*Sam Kyle*, Albany, argued the cause for appellant. With him on the brief were Weatherford & Thompson, Albany.

*LaVerne M. Johnson*, Corvallis, argued the cause for respondent. On the brief were Huston, Thomas & Johnson, Corvallis.

Before PERRY, Chief Justice, and LUSK, WARNER and KESTER, Justices.

KESTER, J.

This is an action for damages for personal injuries arising out of an automobile accident. From a verdict and judgment in favor of plaintiff, defendant appeals. The first assignments of error relate to the trial court's denial of defendant's motions for nonsuit and directed verdict.

The accident occurred on May 2, 1953, at the intersection of Tyler street and Eleventh street in the city of Corvallis. Eleventh street extends in a northerly and southerly direction, Tyler runs east and west, and they make a right-angled intersection. Eleventh street,

and the area within the intersection up to the east and west sidewalk lines, approximately 14 feet on either side of the intersection, have a concrete surface; and Tyler, up to the sidewalk lines on either side of the intersection, has an asphalt surface. On the northwest corner of the intersection is a store building which is set back about 16½ feet north of the north curb of Tyler and a little over 21 feet west of the west curb of Eleventh. On the southwest corner is a house which is set back about 27½ feet south of the south curb of Tyler and about 44 feet west of the west curb of Eleventh. The paved portion of each street is approximately 32 feet wide. On the southwest corner of the intersection is a "slow" sign applicable to cars approaching the intersection from the west.

Plaintiff was driving south on Eleventh and defendant was driving east on Tyler, so that the view of each of them was somewhat obstructed by the store building. The collision occurred in the southwest or south-central part of the intersection. The front of defendant's car struck the right rear portion of plaintiff's car. Defendant's car stopped close to the point of impact, and plaintiff's car spun around, traveled some 51 feet farther south on Eleventh, and stopped facing back toward the north. The only visible skid marks were left by defendant, from the edge of the concrete to where his rear wheels stopped, a distance of 20 feet. The accident happened about 10:30 a.m., the weather was cloudy, and the pavement was dry.

The evidence was in conflict as to the speed of the cars. Accepting, as we must, the version most favorable to plaintiff, the jury could have found that plaintiff was entering the intersection at about 20 to 25 miles per hour, and defendant was approaching at 40 to 50 miles per hour. The latter testimony as to de-

fendant's speed was given by an eyewitness who was in a bus going north on Eleventh, between 1/3 and 1/2 block south of the intersection in question. She saw defendant's car as soon as it passed the house on the southwest corner, and estimated its speed at that time as 40 to 50 miles per hour.

Plaintiff testified that just before she entered the intersection she slowed down and looked to her right, from which point she could see about a half block west on Tyler, and no car was then in sight. She proceeded straight ahead and didn't see defendant until just before the impact, when "this flash came down the road at a terrific speed." She was then so nearly through the intersection that she didn't try to stop, but instead she accelerated to try to clear him. Just as she attempted to speed up, the collision occurred.

Defendant testified that both cars entered the intersection at about the same time, and that he first saw plaintiff when they were both in the respective crosswalks. However, defendant's skid marks began at the west edge of the crosswalk on Tyler street, and allowing for some reaction time, the jury could have found that he was back of the crosswalk when he applied his brakes after seeing plaintiff's car. Since the skid marks began at the very point where the asphalt pavement adjoined the concrete of the intersection, the jury might have inferred that defendant's w h e e l s actually skidded earlier, but that the marks were not visible on the asphalt. One of plaintiff's eyewitnesses, and defendant's passengers, also testified that both cars entered the intersection at about the same time.

■ Defendant claims to be entitled to a nonsuit and directed verdict because plaintiff was contributorily negligent as a matter of law: (1) in failing to yield the right of way, defendant being on the right as they

entered the intersection; and (2) in failing to keep a lookout, as she did not see defendant's car when the physical facts show that it was plainly visible, according to defendant's theory.

The right of way statute is as follows:

"Drivers, when approaching highway intersections, shall look out for and give right of way to vehicles on the right, simultaneously approaching a given point, whether such vehicle first enters and reaches the intersection or not. This subsection does not apply at any intersection where and when traffic is controlled by traffic control signals or police officers. Any driver entering an intersection at an unlawful speed shall forfeit any right of way he would otherwise have under this subsection." ORS 483.202 (1)

▪ As to the claim of right of way, it is sufficient to say that the jury could have found that defendant's speed was excessive, and that he forfeited the right of way. Defendant argues that speed is immaterial, since both cars entered the intersection at the same time. We cannot accept that view, under the express wording of the statute, but even if it were correct, the jury was not bound to find that both entered simultaneously. If the jury believed plaintiff's testimony that no car was visible for half a block, just before she entered the intersection, it could well find that plaintiff was in the intersection first. Because of the defendant's greater speed, and the greater distance plaintiff had to travel from the edge of the intersection to the point of impact, the mere fact of the collision does not demonstrate that both entered the intersection simultaneously, notwithstanding certain language in *McNab v. O'Flynn*, 127 Or 490, 493, 272 P 670. Entering the intersection at the same time is not necessarily the

same as "simultaneously approaching a given point;" and under the statute it is immaterial which enters the intersection first.

■ Even without the factor of excessive speed, a driver on the left, who makes a reasonably careful observation to his right, and who sees no car approaching so closely that there is reasonable likelihood of a collision, is not required to stop or wait but may proceed. *Knox v. Abrams,* 132 Or 500, 508, 286 P 517; *Cox v. Jones,* 138 Or 327, 5 P2d 102. And excessive speed on the part of the favored driver not only forfeits his right of way, but may explain why he was not in view, or did not appear to be within the zone of danger, when the disfavored driver entered.

■ The same considerations necessarily dispose of defendant's claim based on the "physical fact rule." If defendant's speed was twice or 2½ times that of plaintiff, as the jury could find, defendant may have been more distant than the half block which was visible when plaintiff looked to her right upon clearing the building on the southwest corner. Therefore it cannot be said as a matter of law that plaintiff was bound to have seen defendant's car at that point. Whether her lookout was adequate under the circumstances was a question of fact for the jury.

> "It is said that 'the physical facts rule cannot come into play with respect to the position, speed, etc., of movable objects, if the facts relative to speed, position, etc., must be established by oral evidence' or 'where it is necessary to make estimates or measurements, or to start with an assumption of the existence of a fact.' " *Van Zandt v. Goodman,* 181 Or 80, 95, 179 P2d 724; see also *Hopfer v. Staudt,* 207 Or 487, 492, 298 P2d 186.

The remaining assignments of error are based upon

the refusal of the trial court to give the following requested instruction:

> " 'Drivers, when approaching highway intersections, shall look out for and give right of way to vehicles on the right, simultaneously approaching a given point, whether such vehicle first enters and reaches the intersection or not.' (483.202, O.R.S.)
>
> "And in this case, it is admitted that the defendant was approaching the intersection from the plaintiff's right. It was the duty of the plaintiff in this case to look out for and give the right of way to the defendant if the two cars were simultaneously approaching a given point and this duty was fixed upon the plaintiff irrespective of which car first entered the intersection. If the plaintiff failed to do that she was guilty of negligence in this case and she cannot recover and your verdict should be for the defendant."

and upon the trial court's giving the following instruction:

> "There was some testimony and some allegations about the right of motorists in intersections, and so far as it applies to this case, this is the law:
>
> " 'Drivers, when approaching highway intersections, shall look out for and give right of way to vehicles on the right, simultaneously approaching a given point, whether such vehicle first enters and reaches the intersection or not. Any driver entering an intersection at an unlawful speed shall forfeit any right of way he would otherwise have under this subsection.' "

■■ The requested instruction omitted the portion of the statute which provides that right of way is forfeited by excessive speed, and it would have led the jury to believe that the driver on the right has an absolute right of way. Furthermore, the last sentence of the requested instruction omits any reference to

causal connection between the claimed negligence of plaintiff and the happening of the accident. It is true, as defendant claims, that a party is entitled to have his theory of the case presented to the jury, but only when it is based upon a request which correctly states the law. *Severy v. Myrmo,* 186 Or 611, 615, 207 P2d 151. For these reasons, as well as the fact that the right of way statute was elsewhere given in full, it was not error to refuse the request.

■ Defendant objects to the instruction given because it did not contain the further explanation that, if the right of way is forfeited by excessive speed, it is not transferred to the other driver. Defendant contends that without such explanation the jury was led to believe that the right of way is transferred. It is of course true that right of way, so forfeited, is not transferred. *Vroman v. Upp,* 158 Or 597, 605, 77 P2d 432.

But we cannot agree that merely reading the statute to the jury in any way implies that there is such a transference. The record shows that the court gave a number of instructions dealing with right of way, and thereafter the jury came back and requested further instructions on the same subject. In the course of the additional instructions the court, after again reading the statute, said:

> "Now, that is the law on right of way. Now, that means that two cars approaching an intersection, simultaneously approaching a given point in an intersection, the one on the right has the right of way over the one on the left. That's just what that says but it goes on to say that if the one to the right, or the favored operator, enters the intersection unlawfully, he forfeits his right, and if that happens, if you find from the evidence in this case that that has happened, *why then there is no right of way to either of them.* They have to proceed

then each of them exercising reasonable care, such care as reasonable persons would use and exercise as operators of automobiles under those conditions. Have I made that clear to you?" (Italics ours.)

and again:

"THE COURT: Now, listen. 'Drivers, when approaching highway intersections, shall look out for and give right of way to vehicles to the right, simultaneously approaching a given point'—not simultaneously entering but simultaneously approaching a given point—'whether such vehicle first enters and reaches the intersection or not.' Now, the one on the right, the law provides, 'Any driver entering the intersection at an unlawful speed shall forfeit any right of way he would otherwise have under this subdivision.' Now, if the two automobiles are approaching a given point, simultaneously approaching a given point, that means so that they'd come together at the same time, operating at a lawful speed, then the one on the right would have the right of way over the one on the left. If the one on the right enters unlawfully, then he forfeits his right of way *and then they are left, each of them, to operate as reasonable prudent men would operate their automobiles under those conditions.*" (Italics ours.)

The portions above italicized show that the court did instruct that a forfeited right of way is not transferred. In our opinion the subject of right of way was fully and correctly covered, and there is no error.

Judgment affirmed.