Argued October 29, reversed December 13, 1973, petition for
rehearing denied January 15, 1974

MEDINA, *Appellant, v.* MAYO, *Respondent.*

516 P2d 1297

*D. S. Denning, Jr.,* Vale, argued the cause for appellant. With him on the briefs were Schroeder, Denning & Hutchens, Vale.

*Gene Stunz,* Nyssa, argued the cause for respondent. With him on the brief were Henigson, Stunz & Fonda, Nyssa, and Elam, Burke, Jeppesen, Evans & Boyd, Boise, Idaho.

Before MCALLISTER, Presiding Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

HOWELL, J.

Plaintiff was injured while riding as a paying passenger in defendant's auto. A jury returned a verdict for defendant, and plaintiff appeals.

The accident occurred at an intersection in the city of Vale when the defendant's vehicle was struck by another vehicle approaching from defendant's right. The driver of the other vehicle was not made a defendant. The plaintiff charged the defendant, the driver of the vehicle in which she was riding, with failure to yield the right-of-way to the other vehicle approaching from defendant's right.[1]

As her only assignment of error, the plaintiff contends that the trial court erred in giving the following instruction on right of way:

"Now let's get to the specifications of negligence

[1] ORS 483.202 states in part:

"(2) Drivers, when approaching other uncontrolled highway intersections, shall look out for and give right of way to vehicles on the right, simultaneously approaching a given point, whether such vehicle first enters and reaches the intersection or not.

"(3) * * * Any driver entering an intersection at an unlawful speed shall forfeit any right of way he would otherwise have under subsection (1) or (2) of this section."

alleged by the plaintiff. The plaintiff has alleged here the defendant was negligent in failing to yield the right of way. Now, I do instruct you that we have a law in the State of Oregon which provides for the right of way of vehicles under certain circumstances. And this law provides, ladies and gentlemen, that drivers when approaching uncontrolled highway intersections shall look out for and give right of way to vehicles on the right simultaneously approaching a given point whether such vehicle first enters and reaches the intersection or not. *However, ladies and gentlemen, any driver entering an intersection at an unlawful speed shall forfeit any right of way he or she would otherwise have.* Now if, ladies and gentlemen, you find that Mrs. Mayo violated this law that I have just defined for you of the State of Oregon then she would be negligent as a matter of law." (Emphasis supplied).

The plaintiff contends that the instruction should not have included that portion which stated that the favored driver forfeits the right-of-way if he is guilty of excessive speed because there was no evidence of excessive speed.

The accident occurred shortly after 8 a.m. on February 25, 1970, when plaintiff and three other women were riding with defendant on their way home from work. Defendant was driving, and plaintiff was asleep in the back seat. The defendant's auto was traveling west on 8th Avenue, and between 10th and 11th Streets defendant stopped in the middle of the block to let one of her passengers out at her home. Defendant proceeded to the intersection at 11th Street where the collision occurred. The defendant's car was hit on its right side by a vehicle which apparently was heading south on 11th Street.

The plaintiff had no knowledge of the circum-

stances of the accident, as she was asleep. The defendant testified that she stopped at the intersection, looked, saw no cars, and proceeded into the intersection. One of the other passengers testified that she looked and did not see the vehicle until they were almost across the intersection and were hit on the right side of defendant's vehicle.

There were no stop signs or traffic lights at the intersection. No evidence was introduced by either party showing the physical characteristics of the streets, weather conditions, the type of neighborhood involved, or if visibility at the intersection was impaired. The driver of the other vehicle involved did not testify, and there was no evidence of the damage to either vehicle.

In *Wilson v. Overbey,* 223 Or 256, 354 P2d 319 (1960), we stated the following regarding excessive speed by the favored driver in an intersection situation:

"In an intersection collision, before the jury can say that the driver favored by the green light was nonetheless guilty of negligence in the matter of speed, there must be direct evidence from which the jury could find that his speed was excessive under all the circumstances, independent of such highly variable physical facts as the positions of the vehicles after the accident and the nature and extent of damage to the machines or their occupants." 223 Or at 265-66.

However, in *Hess v. Larson,* 259 Or 282, 486 P2d 533 (1971), we held that direct evidence of the speed of the favored driver was not necessary. There, the driver of the unfavored vehicle did not see the other driver until an instant before the impact. However, evidence was introduced regarding the posted

speed, the force of the impact and the damage to one of the vehicles, the skid marks, the position of the vehicles after the accident, and the visibility at the intersection. No similar evidence was introduced in the instant case except that defendant stopped, looked, and did not see the other vehicle until a moment before the impact.

■ Here, the plaintiff has charged the defendant, the driver of the vehicle in which she was riding, with failure to yield the right-of-way. Because the intersection was uncontrolled, the other vehicle, as it was on the defendant's right, had the right of way and defendant's vehicle would have to yield. *Hess v. Larson,* supra; *Ernst v. Broughton,* 213 Or 253, 324 P2d 241 (1958). However, the plaintiff's charge of negligence against the defendant for failure to yield the right-of-way would be negated if the other vehicle entered the intersection at an unlawful speed. Assuming that excessive speed could be inferred in certain cases from the fact that defendant looked and did not see the other vehicle,[2] such assumption must be predicated upon the ability of the defendant to see at the intersection. If defendant's visibility was obscured at the intersection, then any inference of excessive speed by the other vehicle, because defendant looked and did not see the vehicle, is dissipated. Failure to see another vehicle does not necessarily support an inference that the other vehicle was traveling at an excessive speed. It is a matter of common knowledge that the view at many intersections is seriously impaired by trees, shrubs, a

[2] In Dorey v. Myers, 211 Or 631, 317 P2d 585 (1957), we stated that excessive speed on the part of the favored driver *may* explain why he was not in view or did not appear to be within the zone of danger. 211 Or at 636.

retaining wall, or vehicles parked close to the intersection.

■ It was not the duty of plaintiff to disprove her own charge of failure to yield the right-of-way by establishing facts giving rise to an inference of excessive speed by the other vehicle. If the defendant wanted to refute the charge of failure to yield the right-of-way by showing excessive speed of the favored vehicle, she could have done so by introducing evidence to that effect. If she wanted to rely on any inference of speed from the fact that she did not see the favored vehicle, she had the duty to show not only that she looked but that the physical conditions were such that she could see and there was no vehicle approaching. *Dorey v. Myers,* 211 Or 631, 317 P2d 585 (1957).

Under these circumstances we believe that there was insufficient evidence of speed and the instruction was improper.

Reversed.