Argued March 24, reversed June 17, 1954

# CONSOLIDATED FREIGHTWAYS, INC., *v.* GRESHAM TRANSFER, INC.

### 271 P. 2d 647

*F. Brock Miller,* of Portland, argued the cause and filed a brief for appellant.

*Oglesby H. Young* argued the cause for respondent. On the brief were Koerner, Young, McColloch & Dezendorf, of Portland.

Before LATOURETTE, Chief Justice, and ROSSMAN, TOOZE and PERRY, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment of the circuit court which awarded the plaintiff the amount of its prayer. The controversy concerns the construction of a truck lease which contains a pro-

vision requiring the lessor to indemnify the lessee under conditions set forth in the provision.

Both parties are highway common carriers licensed to do business in Oregon. Both own equipment. The plaintiff, hereafter denominated Consolidated, leased a truck from the defendant, to which we shall refer as Gresham. The lease was a single-trip lease; that is, it provided for a single round-trip between Portland and Bend. On the trip, the vehicle collided with a truck owned by one Oltman resulting in damage to the Gresham truck and the death of the driver of the Oltman truck. The leased truck, at the time of the accident, was driven by a regularly employed driver of Gresham, the lessor. The facts of the collision came before this court in *Gresham Transfer, Inc., v. Oltman,* 187 Or 318, 210 P2d 927. In that action Gresham sought judgment against the owner of the Oltman truck for damages to its (Gresham's) truck. After that action had been instituted, another was commenced to recover for the death of the driver. Consolidated demanded that Gresham defend the action, but Gresham declined to do so. A settlement was eventually made in the action and, by agreement between Consolidated and Gresham, each paid one half of the settlement sum, $2,275, and the litigation expenses expended by Consolidated. The action at bar was instituted to recover the amounts expended by Consolidated. It was stipulated that the sum sought was reasonable.

The lease which we mentioned is the nub of the controversy. It was dated November 26, 1946. The paper which embodied its terms was a printed form prepared by Consolidated. Numerous blanks were left in the form in which data of individual application could be entered, such as the make of the truck, the truck's description, the rental and time of payment.

The crucial paragraph of the lease is one which provides that if the lessor did not expressly consent to the use of the truck by a regularly employed driver of the lessee, but limited the lessor's approval to a driver not regularly employed by the lessee, then the lessor would save the lessee harmless from any injury or damage to persons or property resulting from the operation of the vehicle. Appropriate blanks were left to indicate the approval or disapproval of Consolidated's drivers and the designation of suitable drivers.

The defendant-appellant Gresham submits four assignments of error. The first reads as follows:

"The Court erred in refusing to grant defendant's Motion for Judgment on the Pleadings."

That assignment of error is followed by this explanation:

"Defendant, Gresham, at the commencement of the trial, moved by oral motion in open Court for judgment on the pleadings upon the theory that plaintiff's Complaint failed to state a cause of action; the Court reserved decision upon the motion; after plaintiff's case in chief, defendant renewed its motion for judgment on the pleadings and the Court at that time denied the motion and allowed an exception.

\* \* \*

"Said Complaint, including the lease Exhibit, failed to allege that Gresham did not approve of the use by Consolidated of its own drivers in the operation of the leased vehicle and that Lessor had confined its approval as to a driver or drivers to a person not then regularly employed by lessee (Consolidated)."

Paragraph II of the complaint incorporates into itself the lease. The provisions of the lease which

are material to the issues before us are quoted below. The words which were written into the lease by hand are reproduced in italics.

"It is mutually understood and agreed that Consolidated is to have exclusive possession and control of the said equipment for the entire period of this lease, excepting, however, the Lessor may have access to the said equipment at any time for the purpose of maintaining or repairing same, and excepting, further, that Consolidated may not permit said equipment to be driven by any person not specifically approved by Lessor.

"Lessor shall indicate whether or not he approves the use by Consolidated of any of its regularly employed drivers for the operation of the said equipment during the period of this lease by writing (in his own hand) 'yes' or 'no' in the following space, *Yes.* If Lessor does not approve the use of Consolidated's regularly employed drivers and does not so indicate his approval in the space above, then he shall write in, in the following space, the name or names of the person or persons approved by him: *In Towns Only.* It is further mutually understood and agreed between these parties that if Lessor does not expressly authorize Consolidated to use its own regularly employed driver or drivers for the operation of said equipment during the period of this lease, but instead Lessor confines his approval as to a driver or drivers to a person or persons not now regularly employed by Consolidated (including Lessor himself), then, in such event, Lessor agrees to indemnify and save Consolidated harmless in case of any and all injury or damage to persons or property (including damage to the equipment leased hereunder or loss or damage to cargo carried thereon) resulting from the operation of the said equipment during the period of this lease, and Lessor hereby warrants that the following described insurance policies are presently in full force and effect and that in the event of any injury to persons or

loss or damage to property occurring while said equipment is being operated by a person or persons expressly approved herein by Lessor, then Lessor shall apply the proceeds of such insurance to the payment of any and all claims arising from any such injury, loss or damage, whether such claims be made against Lessor or Consolidated, severally or jointly."

 A complaint must allege a duty, a breach, and a resulting injury. *L. B. Menefee Lumber Co. v. MacDonald,* 122 Or 579, 260 P 444. No duty is imposed by law upon the lessor of a truck to indemnify a lessee, who has sole control and possession, for any loss arising from the operation of the truck. However, a contract may impose a duty to indemnify in such a case. A duty arising from a contract to indemnify must be specifically alleged.

If the complaint contains an allegation of duty upon the part of the defendant to indemnify, the averment of the duty can be found only in the two paragraphs of the complaint which we now scrutinize. Paragraph III recites that the lease provided that if Gresham did not expressly authorize Consolidated to use its regularly employed drivers, but instead limited its approval to a driver not regularly employed by Consolidated, then Gresham agreed to indemnify Consolidated in case of injury to persons or property resulting from the operation of the vehicle during the period of the lease.

█ This allegation is defective—it assumes the duty rather than alleges it. The complaint contains no averment that Gresham did not expressly authorize Consolidated to use its own drivers and that Gresham confined its approval to a driver not regularly employed by Consolidated. An averment to that double

effect was necessary to usher in the operation of the indemnity clause. Either Gresham stipulated to the two conditions essential to invoke the indemnity provision or it did not. In the absence of an allegation that Gresham rendered itself bound by the indemnity provision, the complaint stated no cause of action.

The lease, it is true, is incorporated in the complaint and made a part of the latter. We saw from the part of the lease which is quoted in a preceding paragraph that Gresham, as lessor, answered "yes" to the inquiry made in the lease as to "whether or not he (Gresham) approves the use by Consolidated of any of its regularly employed drivers for the operation of said equipment, during the period of this lease." Therefore, that condition upon which the indemnity provision could have become operative was rejected by Gresham. The next words of the lease were pertinent only if the inquiry just quoted was answered "no". They ran as follows: "If Lessor does not approve the use of Consolidated's regularly employed drivers and does not so indicate his approval in the space above, then he shall write in, in the following space, the name or names of the person or persons approved by him." The words last quoted were succeeded by a space. In that space the name of no person was entered, but there was written in it "In Towns Only." Obviously, those words were not the "name or names" of any person or persons approved by Gresham. "In Towns Only" was inappropriate to the inquiry. The complaint nowhere accounted for the presence of those words in the lease and gave no explanation for their entry at that place. It is impossible to attach any significance or meaning to them. At any rate, according to the only information which the pleading furnishes, Gresham answered "yes" to

the inquiry as to whether it approved the use by Consolidated of the latter's drivers in the operation of the leased vehicle, and refrained from entering in the lease the name of any person to whom Consolidated would be restricted as driver for the equipment.

We have taken note of the fact that the complaint contains no express averment that Gresham bound itself to indemnify Consolidated for damage which might arise in the course of the contemplated trip. When we turn to the lease itself, as we have just done, it is seen that Gresham approved the use by Consolidated of the latter's drivers in the operation of the leased equipment, and did not write into the instrument the name of anyone to whom Consolidated was confined in its selection of a driver.

■ The complaint apparently was based upon a belief that because the leased vehicle was "being operated by a regularly paid employee of defendant" at the moment of the collision, the indemnity provision became effective. The lease, however, contains no clause to that effect. According to it, the operation of the indemnity clause was dependent upon two conditions: (1) an answer of "no" by Gresham to the inquiry "whether or not he approves the use by Consolidated of any of its regularly employed drivers for the operation of the said equipment"; and (2) the entry by Gresham in the lease of "the name or names of the person or persons approved by" Gresham as driver for the equipment. If Gresham had retained control over the leased vehicle by answering "no" to the inquiry and by entering in the lease the name of the driver whom Consolidated would have to employ, it would be reasonable to require Gresham to indemnify Consolidated if the operation of the leased truck subjected Consolidated to liability. Thus, the indemnity

clause could become effective only if Gresham did two things: (1) answered ''no'' to the inquiry, and (2) inserted in the lease the name of the driver whom it required Consolidated to employ. The happening of those two, but only those two, conditions rendered the indemnity provision operative. When Gresham answered ''yes'' to the inquiry and refrained from entering in the paper the name of any person, the conditions did not occur which were essential to require Gresham to indemnify Consolidated. Gresham left Consolidated at liberty to select as driver for the leased vehicle anyone whom it preferred. Gresham did not require Consolidated to select as driver for the leased equipment one of Gresham's drivers, but Consolidated was at liberty to choose one of them if it wished to do so. When it made that choice, as it actually did, its action in so doing did not put into effect the indemnity provision. It is our belief that the complaint does not show that the indemnity provision ever became operative. It did not state a cause of action.

This court is not prone to decide a case upon a procedural issue, but the plaintiff invoked in its own favor a valid procedural block to a determination of the merits of the case and, hence, cannot complain when it develops that it was the first to infract a procedural requirement. ''They that take the sword shall perish by the sword.''

We have, however, considered the merits of the case. The procedural block which the plaintiff invoked precludes us from examining any issue of fact settled by the findings and, accordingly, in making the following resume of the evidence, we shall accept as true all findings.

In 1946, due to the large volume of freight which

Consolidated was required to move, its equipment and drivers proved inadequate to the demands, and it was frequently compelled to lease equipment from others and have the lessor supply the driver. A large number of the leases were signed with owner-drivers who earned their livelihood by driving their own trucks in the service of carriers such as Consolidated. Obviously, since those persons earned all or most of their livelihood through the operation of their trucks, they inserted in the lease form the word "no" where "yes" appears in the form at bar. Likewise, those drivers entered their own names as the persons to whom operation was confined. In such instances it was proper to require indemnity if the operation of the vehicle subjected Consolidated to liability.

The lease before us was signed as the result of a brief telephone conversation between John Schmick, president of Gresham, and an employee of Consolidated. Transactions of that kind were common between those two carriers, as Gresham was frequently able to supply Consolidated with equipment and drivers. After the telephone conversation Consolidated's employee secured a lease form, made entries in the blank spaces and signed the instrument, not only on behalf of his employer, Consolidated, but also on behalf of Gresham. The testimony is in conflict over a purported practice of Consolidated's employees to sign, not only as agent of Consolidated, but also of Gresham. In any event, the terms of the lease in question were not discussed over the telephone. Since the findings of fact declare that Consolidated's employee had authority to sign the lease on behalf of Gresham, we will assume that such is the fact.

C. R. Christensen, terminal manager of Consolidated, who negotiated for Consolidated all equipment

leases, testified that in November, 1946, his company experienced a shortage of equipment and also of drivers. As a result of the shortage, it desired that the owners of equipment leased to Consolidated furnish the drivers. We take the following from his testimony:

"Q And isn't it a fact that you never demanded of Gresham Transfer that you be allowed to furnish the driver to drive their rig?

"A That is right.

"Q And isn't it also a fact that the defendant, that defendant Gresham Transfer never refused to allow you to use one of your drivers if you wished?

"A I don't think we ever asked them to use one of ours. * * *

"A In every case where we ever leased to Gresham Transfer, either prior to this or since this lease, they have always furnished their own driver.

* * *

"Q You have just stated that you prefer to use the drivers of Gresham Transfer, Inc., and that they never refused to let you use your own drivers; isn't that correct?

"A That is right."

Mr. Schmick, referring to the numerous equipment leases between his company and Consolidated, testified:

"It was understood that we were to furnish a driver * * * they just did not have the man power to furnish drivers."

Neither lessor nor lessee profited whether or not the one or the other furnished the driver. Each carrier paid its drivers upon the same wage scale. The sums paid the driver were added to or subtracted from the amount due when the rental accountings occurred.

When Gresham supplied the driver, it did not do so in order to earn an extra reward or to retain control over the leased truck, but as an accommodation to Consolidated.

There is no suggestion by Consolidated that Gresham ever sought to control or give orders to any driver while he was working for Consolidated upon a leased truck. If Gresham ever sought to exercise any authority whatever over any driver of a truck which it had leased to Consolidated, no witness made any intimation of the fact. The cargo in the truck was Consolidated's. It issued the bills of lading, chose the route and time schedule. It collected the tariffs, and the business was its own.

As we have seen, a provision of the lease says:

"It is mutually understood and agreed that Consolidated is to have exclusive possession and control of the said equipment for the entire period of this lease, * * * "

A rule promulgated by the Public Utilities Commissioner reads as follows:

"All leases must provide that the sole possession and control of the vehicle for the period of the lease are entirely vested in the lessee and that the operation thereof will be conducted under the supervision and control of the lessee and that lessee will be responsible for compliance with the provisions of the Motor Transportation Act."

Mr. Christensen testified that the words "In Towns Only", which were written by hand in the lease, meant that Consolidated could use its drivers "in towns for pick-up and delivery service." He conceded that the words did not answer the inquiry which preceded them, but ventured a belief that they were written in that place "because there wasn't room for it up above."

Accepting the meaning asserted by Mr. Christensen, there remains the question as to whether such meaning constitutes an acceptance of conditions which would give effect to the indemnity provision. The provision for indemnification is an exception to the general rule that the lessor is under no duty to the lessee to indemnify if the lessee becomes liable for a loss due to the operation of the leased vehicle. A provision for indemnification is generally based upon control over the leased vehicle, if any was in fact retained. The retained control justifies the shift of the ultimate risk. No circumstances were divulged by the evidence showing that Gresham desired to retain any control whatever over the vehicle it leased to Consolidated. It is true that a driver, normally in its employ, was at the controls during the course of the trip. But it is clear that the driver was furnished as an accommodation to Consolidated. While the truck was being driven, the driver, for all practical purposes, was an employee of Consolidated and was subject to its, not Gresham's, control. These circumstances demonstrate lack of logical reason why Gresham should bear the risk of the carriage. They do not impel us to construe the language of the lease in Consolidated's favor. The language of the lease which was intended to give Consolidated the benefit of indemnity demanded that Gresham should answer "no" to the inquiry and list the name of the driver, if any, whom it wished selected. The conditions were strictly drawn and Consolidated was their draftsman. It even filled in the blank spaces. Under those conditions all ambiguities and doubts which remain after the evidence has been analyzed must be resolved against Consolidated. *Marnon v. Vaughan Motor Co., Inc.,* 184 Or 103, 194 P2d 992. When Consolidated had prepared the lease it saw that

it had not made entries in the blank spaces which were requisite to give it the benefit of the latent indemnity clause. Therefore, it had no right to look to that clause. When it accepted the leased truck and the driver which Gresham sent with it, the truck became Consolidated's for the period of the lease, and the driver became its employee until the truck returned to its base.

We believe that the circuit court erred when it denied the defendant's motion for judgment upon the pleadings. We direct that court to vacate the challenged judgment and enter one in defendant's favor.

Reversed.