Argued March 21, affirmed May 31, 1956

# HOPFER *v.* STAUDT and LOS ANGELES-SEATTLE MOTOR EXPRESS

298 P. 2d 186

*Charles S. Crookham,* Portland, argued the cause for appellant. On the brief were Vergeer & Samuels, Duane Vergeer and Charles S. Crookham, all of Portland.

*Paul F. Burris,* Salem, argued the cause for respondent and cross-appellant. On the brief was Allan G. Carson, of Salem.

*John Gordon Gearin,* Portland, argued the cause for cross-respondent. With him on the brief were Koerner, Young, McColloch & Dezendorf, John Gordon Gearin, Oglesby H. Young, James H. Clarke, all of Portland.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, BRAND and PERRY, Justices.

BRAND, J.

The plaintiff Hopfer brought this action for damages arising out of an automobile collision. The defendants were E. T. Staudt and Los Angeles-Seattle Motor Express, Inc., a corporation, hereafter called LASME. There was a verdict for plaintiff and against both defendants, for $20,000, and judgment was entered thereon. Thereafter the defendant E. T. Staudt, acting for himself alone, moved for judgment notwithstanding the verdict. The court allowed the motion and entered judgment for costs in favor of the defendant E. R. Staudt and against plaintiff. LASME appeals from the judgment against it, and the plaintiff Hopfer appeals from the judgment n.o.v. The collision occurred within the city of Woodburn on Highway 99 which, at that point, consists of four lanes, two north bound and two south bound, separated by a double yellow line along the center of the highway. Highway 99 is intersected by Blaine street. It extends, in general, from the southwest to the northeast, so that a car north bound on Highway 99 and turning to the left into Blaine street would have to make somewhat more than a ninety-degree turn. The accident occurred at about 4 o'clock a. m. The plaintiff was driving in a northerly direction on Highway 99 and was intending to turn to the left into Blaine street. The truck which collided with plaintiff's car was also north bound on Highway 99. The collision occurred within the intersection. The complaint alleges that the truck was being driven ''to the rear of the automobile being operated by plaintiff,'' and that ''as plaintiff operated his automobile westerly in said intersection and was crossing the dividing line between the south bound lanes of said Highway in said intersection,'' the defendants negligently drove the truck onto the west side of the highway and collided with the

left side of plaintiff's automobile. The plaintiff contended that he was driving along the northerly lane nearest to the center line of the highway. The testimony in behalf of the defendant LASME was to the effect that the plaintiff was driving in the extreme east traffic lane and that the defendant was following the plaintiff but was in the inside north-bound traffic lane. Defendant alleged that the plaintiff suddenly and without warning turned from the extreme east traffic lane to the left, directly in front of the truck.

The foregoing statement is sufficient for an understanding of the first assignment of error presented by LASME. By that assignment it is urged that the trial court erred in denying the following motion to strike certain testimony given by the plaintiff. The motion was as follows:

"Mr. Gearin: At this time, if the Court please, defendant Staudt for himself alone respectively moves the Court for an order striking from the testimony the testimony of the plaintiff with respect to how the accident happened. In that respect I call Your Honor's attention to the following testimony of Mr. Hopfer; he testified on cross examination that he was approximately 25 to 30 feet south of the intersection when he started to turn. At that time he was proceeding at a speed of 20 miles an hour. At that time, he saw the truck behind him which was then a distance of 200 or 300 feet behind him to the south. He traveled from the point where he started to make a turn, which was 25 or 30 feet from the intersection, a distance of 25 or 30 feet further from that point until the time of impact, and at the time he started to turn, the truck was 200 feet or further behind him. Therefore while he was proceeding a distance of 25 or 30 feet at 20 miles an hour, the truck had to travel between 200 and 300 feet, in excess of 200 feet, to the point of impact;

he had to go ten times as fast, or in excess of 200 miles per hour.''

The motion to strike was made by counsel for the defendant E. T. Staudt but was adopted by counsel for LASME.

■ In support of his assignment of error the defendant relies upon the so-called incontrovertible physical facts rule. It is argued that the plaintiff traveled 30 feet at 20 miles per hour and that in the same period of time, according to his own testimony, the truck traveled approximately 200 to 300 feet and therefore must have been traveling at approximately 200 miles per hour. Since it is impossible that the truck was traveling at any such speed, the defendant LASME contends that plaintiff's testimony should have been stricken as contrary to incontrovertible physical facts. The plaintiff's testimony concerning his own speed was based solely upon an estimate. His testimony concerning the distance between his car and the truck could have been no more than an estimate. In view of these facts our decision is controlled by the case of *Van Zandt v. Goodman et al.*, 181 Or 80, 179 P2d 724. In that case we recognized that a verdict cannot be based on evidence which is opposed to established physical facts, but we held that

"The 'physical facts rule' cannot come into play with respect to the position, speed, etc., of movable objects, if facts relative to speed, position, etc., must be established by oral evidence or where it is necessary to make estimates or measurements or to start with an assumption of existence of a fact." Headnote 8.

"Trial court was not required to reject testimony of driver of automobile in which plaintiff was riding concerning position of defendant's automobile under the so-called 'incontrovertible phys-

ical facts rule' because of later statements by such witness, which, by hypotheses, were absurd.'' Headnote 9.

The evidence indicates that the plaintiff's testimony as to the distance between the two cars must have been more like a guess than an estimate. It was based on observation in a rear view mirror which had some discoloration, and plaintiff testified that at night "it was hard to judge but it looked like they were at least a block behind me.  *  *  *'' Again, plaintiff testified as follows:

"Q  At the time you started to angle over when you were twenty-five or thirty feet from the intersection, can you give me any idea how far the truck was behind you at that particular time?

"A  Well, no; I was watching so I wouldn't miss the intersection. In that instant I was looking forward again."

Defendant LASME cites *Cameron v. Goree,* 182 Or 581, 189 P2d 596. In that case the question at issue was the sufficiency of the evidence when challenged by a motion for nonsuit. That decision is not in point here. The motion made in the pending case was to strike "the testimony of the plaintiff with respect to how the accident happened", most of which was both relevant and admissible. Neither *Cameron v. Goree* nor *Oregon Motor Stages v. Portland Traction Co.,* 198 Or 16, 255 P2d 558, cited by LASME purport to weaken the authority of *Van Zandt v. Goodman* which controls here.

■ By its second assignment of error the defendant LASME complains of the refusal of the trial court to give a requested instruction which reads in part as follows:

"*  *  *  Therefore, when physical facts of the case appear in evidence and are undisputed, or

> where you are firmly convinced of the truth of evidence as to physical facts, these physical facts may be entitled to greater weight than the verbal testimony of the witnesses. If the testimony of any witness is clearly contrary to the undisputed physical facts of the case, you should disregard that testimony and rely upon the physical facts."

The request was properly refused. The fact that a truck and trailer cannot go 200 miles per hour may be undisputed, but the distance between the two cars was directly in dispute and consequently the inference as to the speed at which the truck was going when it covered the distance was also in dispute.

■ Defendant LASME assigns error in that the court failed to allow the motion to amend its answer. After both sides had introduced their evidence, the record shows that plaintiff rested. Thereafter the court inquired of counsel if they had any further testimony, to which counsel for both defendants answered in the negative. There was no motion to reopen the case. But the defendant LASME asked leave to amend its answer by adding an additional specification of negligence to read as follows:

> "* * * In making a left turn, or in attempting to make a left turn from Highway 99-E without first passing to the right of the center line of the intersection at which the plaintiff attempted to make such turn. * * *"

In the first place the proposed amendment is ambiguous. We do not know what is meant by "the center line of the intersection." There was ample opportunity for the defendant to have offered his proposed amendment before both parties had rested. Secondly, the proposed amendment is inconsistent with the allegations of the affirmative defense upon which the case was tried and

which charged that plaintiff's negligence was in "attempting to make a left turn from the righthand northbound lane instead of from the lefthand northbound lane." In view of the stage of the case at which the motion was made, the decision was clearly within the discretion of the trial judge. We find no evidence of abuse of that discretion. *Bennett v. City of Portland,* 124 Or 691, 265 P 433; *Schamoni v. Semler,* 147 Or 353, 31 P2d 776.

■■ As a part of the third assignment of error it is asserted that the court erred in failing to give the following requested instruction:

"The defendants have charged the plaintiff with negligence in attempting to make a left turn before reaching the intersection and without first passing to the right of the center line of Highway 99-E where it enters the intersection with Blaine Street. It is the law of this state that an approach for a left turn shall be made in the lane of traffic to the right of and nearest to the center line of the highway, and a left turn shall be made by passing to the right of said center line where it enters the intersection. You are instructed that under the evidence of this case, the plaintiff has admitted that he has violated this statute and you are therefore instructed that the plaintiff was negligent as a matter of law in this particular."

This requested instruction appears to have been based on the assumption that the court had allowed the defendant to amend its answer as requested, whereas in fact the motion to amend had been denied. The answer of defendant LASME does not charge plaintiff with attempting to make a left turn before reaching the intersection. We quote from the answer, which admits that "plaintiff * * * attempted *to* turn said automobile westerly *at* the intersection * * *." (Italics

ours.) It may be added that an admission that plaintiff "attempted to turn" is not an allegation that he turned. The theory of the defendant, supported by his testimony, was that the plaintiff was driving on the easterly northbound lane when the defendant was driving on the westerly northbound lane, and that the plaintiff, without warning, turned into the westerly or inside northbound lane in front of defendant's truck. Plaintiff, on the contrary, testified that he was driving on the westerly or inside northbound lane as required by statute for one intending to turn left, and that he gave a left-turn signal and that the truck was directly behind him. Defendant's contention that plaintiff admitted that he violated the statute, now ORS 483.316, is based on plaintiff's testimony, as follows:

"A  I realized this truck was coming up behind me at a rapid pace and gave my signal and started to turn over to the west side of the highway a little bit to give him a choice of going straight through or taking the east lane so I wouldn't have to slow him down.

"Q  And then what happened?

"A  Well, I started to make my turn and I guess that's all I remember."

On cross examination plaintiff testified thus:

"Q  I see; now when you started to make your left hand turn, about how far south of the intersection were you?

"A  When I started to make my turn?

"Q  When you started to turn.

"A  Maybe twenty-five or thirty feet."

He added:

"A  *  *  *  I started to angle into the intersection to clear both north bound lanes for the truck behind me."

Plaintiff's wife who was with him in the car testified:

> "Q  Isn't it a fact that your husband started to turn at the point where the crosswalk would be?
>
> "A  Just about there.
>
> "Q  Then he started his left hand turn?
>
> "A  About there."

The plaintiff did not admit that he violated the statute. The jury could perhaps have inferred that he did, but we think upon all the evidence it was for the jury to say whether plaintiff did or did not pass to the right of said center line where it enters the intersection. There is no merit in the third assignment of error.

■ By his fourth assignment defendant complains of the refusal to give the following requested instruction:

> "Defendants have charged the plaintiff with negligence in failing to yield the right of way to the motor truck. Right of way is defined as the right to the immediate use of the highway, and if you find from all the circumstances that have been brought to your attention that the truck driver was entitled to proceed upon the lane of traffic in which he was prior to the occurrence of the accident and that the plaintiff brought his vehicle upon that portion of the road, which the motor truck was entitled to use, then the plaintiff would have been negligent in failing to yield the right of way."

The court gave an adequate instruction, as follows:

> "Defendants have also charged plaintiff with attempting to make a left turn from the right hand north-bound lane instead of from the left hand north-bound lane. In this connection you are charged that it is the law of this state as provided by statute that an approach for a left turn shall be made in the lane of traffic to the right of and nearest to the center line of the highway, and if you find that

the defendant attempted to make a left turn from the right hand lane, you are instructed that this would be negligence on his part.

"Defendants have charged the plaintiff with negligence in attempting to drive his vehicle from one lane of traffic to another without first seeing that such movement could be made in safety. The laws of this state provide in part as follows: The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety; and whenever the operation of any other vehicle may be affected by such movement shall give a signal, as required in this section, plainly visible to the driver of the other vehicle of the intention to make such movement.

"In connection with the charges of negligence against plaintiff, I instruct you that there were in effect at the time of the collision the following statutes of the State of Oregon: A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety. The driver of any vehicle upon a highway before turning from a direct line shall first see that such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to make such movement; whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to turn to the left by extending his hand and arm horizontally from and beyond the left side of the vehicle. The signal herein required to be given before turning to the right or left shall be given continuously during the last fifty feet traveled by the vehicle before turning. Violation of any of the foregoing statutes constitutes negligence as a matter of law."

We refer to *Brindle v. McCormick L. & M. Corp.*, 206 Or 333, 293 P2d 221, decided February 8, 1956, where it is said:

"* * * Where violation of any of the specific duties defined in these statutes appears, it is, of course, appropriate to instruct in the language of the statute.

"But in a case such as this an instruction on right of way is unnecessary and could be confusing. * * *"

We would add that the instruction requested by the defendant was too indefinite to be of any aid to the jury and could be confusing. One portion of the requested instruction defined right of way as "the right to the *immediate* use of the highway." (Emphasis ours.) The latter portion of the request would have advised the jury that plaintiff would be negligent if he "brought his vehicle upon that portion of the road which the motor truck was entitled to use" without adding the words "immediately to use." The jury might have understood the instruction as meaning that if defendant was entitled to use the left-hand northbound lane the plaintiff must not "bring his vehicle" into that lane regardless of the distance between the two vehicles.

■ By the fifth and last assignment of error defendant contends that the court erred in failing to give a lengthy requested instruction setting forth nine different tests which have been employed by the courts in considering whether one is a servant or an independent contractor. There are several reasons for our conclusion that it was unnecessary for the court to give the requested instruction. One will suffice. The undisputed evidence shows that the truck was owned by defendant E. T. Staudt and was operated by his son

Clinton E. Staudt. The particular trip was taken pursuant to a written lease executed by Clinton E. Staudt acting for his father, as lessor, and LASME as lessee. The instruction was inappropriate for the simple reason that it ignored the provisions of the lease, a construction of the terms of which was a vital issue in the case. The effect of the lease will be considered in detail in connection with the cross appeal. We find no error prejudicial to the rights of LASME.

We turn to the cross appeal of the plaintiff. It will be recalled that plaintiff alleged in his complaint that the truck was operated by Clinton E. Staudt ''for and on behalf of said Los Angeles-Seattle Motor Express, Inc., and E. T. Staudt  *  *  *.'' In substance, plaintiff claimed that Clinton E. Staudt was the servant of both. Verdict and judgment were entered for plaintiff and against both defendants, and thereafter the trial court granted judgment n.o.v. in favor of E. T. Staudt from which plaintiff appeals.

Plaintiff's first contention relates to procedure. He contends that the judgment n.o.v. was ineffective because the court did not expressly vacate the former judgment for plaintiff and against defendant Staudt. Counsel contends that the code contemplates but one judgment and since the first was not vacated the second was void. The motion of defendant E. T. Staudt was for ''judgment notwithstanding the verdict  *  *  * and setting aside any judgment which may have been entered and rendered against him.'' The order of the court reads, in part, as follows:

''*  *  *  that defendant E. T. Staudt's motion for judgment notwithstanding verdict be and the same hereby is granted, and does further

''ORDER that judgment be and the same hereby

is entered in favor of defendant E. T. Staudt, dba Brown-Line Freight Company and against Joseph A. Hopfer, * * *.''

■ It must be said that the ordinary and proper procedure is to set aside the former judgment in express terms if one has been entered. The statute provides that the court may under conditions specified ''render a judgment notwithstanding the verdict, or set aside any judgment which may have been entered and render another judgment * * *.'' ORS 18.140.

■ Plaintiff cites *Durkeimer Inv. Co. v. Zell*, 161 Or 434, 441, 90 P2d 213, and 49 CJS, Judgments, § 65, to the general effect that there can be but one final judgment in an action at law, and ''when a final judgment has once been entered, no second or different judgment may be rendered * * * until the first shall have been vacated * * *.'' As a general statement the foregoing may be accepted. But here the question is whether in legal effect the first judgment was or was not vacated. The order which the court entered stated that the motion for judgment n.o.v. which prayed that the former judgment be set aside ''is granted.'' The judgment n.o.v. was not a mere repetition or re-entry of the prior judgment as was the case in *Oxman v. Baker County*, 115 Or 436, 234 P 799, 236 P 1040. Here the subsequent judgment was, in effect, the exact opposite of the former judgment and necessarily operated to vacate it. We see no difference in principle between this case and those which hold that an order for a new trial operates as a vacation of the judgment previously rendered. *Lapique v. Walsh*, 191 Cal 22, 214 P 876; *Stephenson v. Home Ins. Co. of New York*, 67 Mont 193, 214 P 954. See also, 31 Am Jur 317, Judgments, § 791, and *Murray v. Hurst*, 163 Md 481, 163 A 183.

In *Barrell v. Tilton,* 119 US 637, 30 L ed 511, a second decree was entered which differed from the first. The United States Supreme Court said:

"When the second decree was made, it would, as stated by the learned district judge, have been a better course, 'more orderly and convenient,' as he expresses it, 'to have referred to the first one, and stated in what particular the latter was intended to modify, supplement or supersede the former.' But this was not essential; a comparison of the two decrees discloses the additions made to the first one."

No reversible error was committed by the failure of the trial court expressly to vacate the earlier judgment. The intent to vacate was clearly implied. We conclude that the judgment n.o.v. constituted a vacation of the prior judgment and we therefore pass on to a consideration on the merits of plaintiff's cross-assignment whereby it is asserted that the court erred in giving judgment for the defendant Staudt notwithstanding the verdict.

The question for consideration is whether there was any substantial evidence that would support a finding by the jury that E. T. Staudt was liable under the doctrine of respondeat superior for the negligence of Clinton E. Staudt, the operator of the truck. Plaintiff contends that the driver was the servant of E. T. Staudt and also was at the same time the servant of LASME and that both defendants were liable for the negligence of the driver. Defendant E. T. Staudt contends that the driver was a borrowed servant for whose acts LASME alone could be liable. It is possible that two persons acting jointly in a common enterprise may employ a person who would be the servant of both. But in this case there was no such common enterprise. E. T.

Staudt had no interest in the business of LASME. His only interest was in the compensation he was to receive from LASME, the lessee of the truck and driver.

█ It has been said that a person may be the servant of two masters who are not jointly engaged in the same business. If this is possible it is only under special circumstances which do not exist here. See Restatement of Agency, § 226, and illustrations. The appropriate section of the Restatement is as follows:

> "A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. * * *" Restatement of the Law, Agency, § 227.

In *McFarland v. Dixie Machinery and Equipment Co.*, 348 Mo 341, 153 SW2d 67, plaintiff was injured by the alleged negligence of the driver of a tractor and sued the defendant who was the owner of the tractor and the general master of the driver. The defendant, however, had leased the tractor with the driver to Kansas City for use by the WPA. Defendant not only furnished tractor and driver but oil fuel and repairs. The evidence, however, showed that the superintendent of the WPA project had exclusive charge of the work done by the tractor. The driver was a skilled workman and no one told him how to operate, but they did tell him where and what kind of work to do. Plaintiff recovered verdict and judgment against the defendant. On appeal the Missouri Supreme Court in a well-considered opinion held that the trial court should have directed a verdict for the defendant. We quote:

> "* * * Although there may be joint employment, and also acts for which more than one employer may be liable (Standard Oil Co. v. Anderson, 212 U.S. 215, loc. cit. 222, 29 S.Ct. 252, 53 L.Ed.

480; Restatement of Agency, Secs. 226, 227), nevertheless, there is no several liability of two persons (not acting jointly) *as separate masters* of a single servant for the same act. * * *"

We have affirmed the judgment against LASME, although we think the jury might well have found for that defendant on the ground of contributory negligence. We think the record conclusively shows that the driver Clinton E. Staudt was not at the time of the collision a servant of defendant E. T. Staudt.

■ E. T. Staudt had no ICC permit authorizing him to transport the freight in interstate commerce from California into Oregon. He could not lawfully haul general freight in Oregon. For this reason a lease was executed by Clinton E. Staudt for his father E. T. Staudt whereby the truck and trailer were leased to LASME. The undisputed evidence is that the driver went with the truck. The lease was for a single trip from San Francisco to Seattle. It was to "take effect upon the commencement of the loading of said equipment and shall terminate at the end of the trip with the completion of the unloading thereof. * * *" It expressly provided that "During the period of this lease, said above described equipment shall be in the exclusive control of the lessee." Payment was to be made to the lessor at a specified rate per ton. The lease was made subject to the provisions of the Interstate Commerce Act. The lessor furnished all costs of operation. The lessee was obligated to pay for and on behalf of the lessor all taxes, governmental charges "and insurance of every character required by the operation of said equipment under the terms of this lease and shall deduct such items from the amount of rental herein provided for." It was also provided

that "any damage to cargo due to negligence of lessor will be charged to the account of the lessor."

It is interesting, though not conclusive, that LASME had previously brought a declaratory judgment action seeking a construction of the written lease, treating that instrument, as construed, to be conclusive concerning the issue of liability. The uncontradicted evidence showed that Clinton E. Staudt was hauling for LASME under the lease. The cargo belonged to LASME; none of it to Staudt. LASME, by its representative Frank Bolster turned over the "load manifest and bills and a way bill manifest" to the driver. LASME loaded the truck and instructed the driver to be in Portland "Monday morning at eight o'clock."

The driver notified LASME of the accident and a representative of that company immediately came to investigate. A LASME truck removed the injured truck after the collision. The driver made freight stops only at LASME delivery points, i.e., Medford, Eugene, Salem and Portland. The driver personally unloaded LASME's freight at Medford and Salem. The certificate of convenience and necessity issued to LASME and designating the authorized routes and commodities was received in evidence. Regardless of the detailed agreements between lessor and lessee, the lease certainly establishes the fact that the driver was the servant of LASME at the time and place of the collision, so far as the rights of injured third parties were concerned. LASME not only had the right of exclusive control, but it also exercised that right. There can be no question but that the parties contemplated that the driver was turned over to LASME along with the truck. This right to, and exercise of, control, related exclusively to a business and to commodities which belonged to LASME and in which Staudt had no interest. Our con-

clusion that the driver was the borrowed servant of LASME and that the trial court properly granted judgment n.o.v. in favor of Staudt is supported by the following authorities: *Finegan v. H. C. & A. I. Piercy Contracting Co.,* 178 NYS 785, 189 App Div 699; *Clendenon v. Colonial Supply Co., Inc.,* 267 Ky 544, 102 SW2d 992; *Isaacs v. Prince & Wilds,* 133 Miss 195; 97 So 558; *Bowen v. Gradison Construction Co.,* 236 Ky 270, 32 SW2d 1014; *Hickman v. Strunk,* 303 Ky 397, 197 SW2d 442; *Hilgenberg v. Elam,* 145 Tex 437, 198 SW2d 94; *Steele v. Wells,* Tex App, 134 SW2d 377; *Beasley v. Whitehurst,* 152 Va 305, 147 SE 194; *Coker v. Gunter,* 191 Va 747, 63 SE2d 15; *Gas City Transfer Co. v. Miller,* 107 Ind App 210, 21 NE2d 428; *Core v. Resha,* 140 Tenn 408, 204 SW 1149; *Devaney v. Lawler Corporation,* 101 Mont 579, 56 P2d 746; *Wylie-Stewart Machinery Co. v. Thomas,* 192 Okla 1145, 137 P2d 556; *American Fidelity & Casualty Co. v. Zurich General A. & L. Ins. Co.,* 70 F Supp 613; *Western Marine and Salvage Co. v. Ball,* 37 F2d 1004; *Malisfski v. Indemnity Insurance Co. of North America,* 135 F2d 910; *Virginia Tobacco Co. v. Wilson,* 169 F2d 652. See also, 5 Cyclopedia of Automobile Law and Practice, Blashfield, § 2945 et seq. and 17 ALR2d 1388 et seq. Oregon decisions bearing on the question of liability as between owner and lessee or bailee and tending to support our decision include the following: *Butenshon v. Shoesmith,* 191 Or 76, 228 P2d 462; *Consolidated Freightways v. Gresham Transfer Co.,* 201 Or 623, 271 P2d 647; *Jasper v. Wells,* 173 Or 114, 144 P2d 505; *Summerville v. Gillespie,* 181 Or 144, 179 P2d 719; *Kantola v. Lovell Auto Co.,* 157 Or 534, 72 P2d 61; *Judson v. Beehive Auto Service Co.,* 136 Or 1, 294 P 588, 297 P 1050.

■ The plaintiff argues that the leasing to LASME

was only a colorable arrangement in letter—compliance with the administrative rules of the Interstate Commerce Commission. We know of no rule of law which would invalidate a lease made by one who had no permit for interstate transportation to a lessee who has such permit. The plaintiff cites *Simon v. McCullough Transfer Co.*, 155 Ohio St Rep 104, 98 NE2d 19, in support of his position, but that case does not support his contention. At the time of the accident in that case the driver-owner had completely finished his service for the defendant and was not then subject to defendant's control or engaged in defendant's business.

The judgment for plaintiff and against LASME is affirmed. The judgment n.o.v. against plaintiff and in favor of E. T. Staudt is likewise affirmed.