Argued July 15, affirmed October 7, petition for rehearing
denied November 4, 1959

# HECHT *v.* JAMES
345 P. 2d 243

*Harry Samuels* argued the cause for appellant. On the briefs were Dale T. Crabtree, Stayton, and Vergeer & Samuels and Charles T. Crookham, Portland.

*C. S. Emmons* argued the cause for respondent. On the brief were Willis, Kyle & Emmons, Albany.

Before McALLISTER, Chief Justice, and PERRY, SLOAN and CRAWFORD, Justices.

SLOAN, J.

The jury awarded plaintiff damages for personal injury sustained in an intersection collision between automobiles operated by the parties. The defendant appeals. His principal complaint is the failure of the trial court to sustain his motion for a directed verdict. He contends the plaintiff was guilty of contributory negligence as a matter of law which was the cause of the accident. In addition to the motion for directed verdict he presents the same issue by exceptions to the court's instructions, both given and denied. We will relate sufficient of the evidence most favorable to the plaintiff to permit understandable disposition of the case.

The accident occurred in Linn County, about three miles southeast of Stayton on a county road described as the Kingston-Jordan Road. At the place of the accident the county road is an asphalt surfaced roadway about 20 feet in width. It extends in a general northerly and southerly direction. At that place the county road is intersected by a gravel road at approximate right angles. However, the center of the gravel road intersecting the county road on the easterly side

thereof is approximately 19 feet south of the center of the gravel road intersecting on the westerly side of the county road. Both the county road and the gravel road are substantially level at the point of intersection. The county road extends southerly from the intersection in a straight course. At a point estimated to be from 600 to 800 feet southerly of the intersection the county road contains a rise in grade. The high point of this grade is sufficiently above the grade at the intersection to prevent a driver of an automobile in the intersection from seeing automobiles approaching on the southerly slope to this high grade, and vice versa.

The accident occurred at the described intersection about 10:30 a.m. on a misty morning. Visibility, however, was not materially impaired. The plaintiff, driving a Jeep station wagon, approached the county road on the gravel road which intersected it from the west. A stop sign at that point commanded him to stop, which he did. After he stopped he permitted another vehicle approaching on the county road from the north to pass in front of him. Plaintiff testified that he looked to the north and then looked to the south. He saw no other vehicles approaching. He then started across the county road and his car had completely crossed the center line of the county road when the right side of his car was struck by defendant's car coming from the south. The plaintiff stated that he did not look to the south more than the one time and admits he never saw the defendant's vehicle.

There is evidence from eyewitnesses, which we must believe, that defendant's car approached from the south at a high rate of speed in excess of 60 miles per hour. One estimate put the defendant's speed in excess of 70 miles per hour. The testimony of these eyewitnesses

most favorable to plaintiff was that the defendant's speed did not slacken before the impact, there was no sound of a horn, there were no skid marks, no screech of sliding tires which permits the inference that there was no application of brakes and that defendant's car did not deviate in its course. The same witnesses testified that after the accident the defendant exclaimed that he did not see the plaintiff's vehicle. The defendant testified that his car was a total wreck not worth repair. The plaintiff's car was thrown sidewise and landed on its top in a ditch about 22 feet from the estimated point of impact. Plaintiff was seriously injured.

The defendant's first assignment is directed to the failure of the trial court to direct a verdict. The second assignment concerns the failure of the trial court to instruct the jury as a matter of law that plaintiff failed to keep a proper lookout before entering the intersection. The fourth assignment charges error in an instruction given by the court informing the jury that it was for the jury to determine whether or not plaintiff had conformed to his duty to look, and the fifth assignment complains of the failure of the court to instruct that if the physical facts contradict verbal testimony of a witness the testimony of the witness is to be rejected.

Defendant predicates all these assignments upon the premise that when plaintiff claims that he looked to the south the defendant's vehicle must of necessity have been in clear sight and since plaintiff also claims he did not see the defendant's car it must be assumed that plaintiff did not look.

It has been mentioned that the driver of a vehicle in the position of plaintiff, in or entering the intersection in question, had an unimpeded view to the south

of from 600 to 800 feet to the high point in the grade
of the county road to the south. It is contended that
if plaintiff did look before entering the intersection
he could have seen to the rise in the grade and that
the time interval between the plaintiff's look and the
collision was so brief that the defendant could not
possibly have traversed the distance of 600 feet in that
time. In his brief defendant attempts to show that
this interval between the look and the collision could
not have been more than three seconds; that if such
were true it would require a speed of about 140 m.p.h.
on the part of defendant's automobile to reach the
point of collision in that time. Defendant makes the
estimate of three seconds of time by taking the speed
the plaintiff testified his vehicle was going as it crossed
the intersection. What defendant overlooks in his
argument is that his version of the time element is
only an estimate. And as an estimate it gives no con-
sideration to the interval of time required by plaintiff
to place his car in motion after he looked. There is
no evidence indicating what this may have been. On
the other hand we have positive testimony that de-
fendant was driving at least 60 miles per hour. At
that speed he would have traveled the 600 feet from
the rise to the intersection in about 6½ seconds, still
an extremely short interval of time. We are not pre-
pared to say that it was impossible for the plaintiff
to have expended 6½ seconds between the time he
looked, placed the car in motion and reached the far
side of the county road.

■ This court has adopted the view that the appli-
cation of the physical facts rule cannot be based upon
estimates.

> "It is said that 'the physical facts rule cannot
> come into play with respect to the position, speed,

etc., of movable objects, if the facts relative to speed, position, etc., must be established by oral evidence' or 'where it is necessary to make estimates or measurements, or to start with an assumption of the existence of a fact'. Anderson, An Automobile Accident Suit, 707 § 571; 708 § 572. See cases cited in the notes and Duling v. Burnett, 22 Tenn. App. 522, 124 S.W. (2d) 294." *Van Zandt v. Goodman et al.*, 181 Or 80, 179 P2d 724.

The Van Zandt case is now the settled law of this state. *Ore. Motor Stages v. Portl'd Traction Co.*, 198 Or 16, 255 P2d 558; *Hopfer v. Staudt,* 207 Or 487, 493, 298 P2d 186.

■ This case was properly submitted to the jury to determine to what extent, if any, the plaintiff looked and if, in this particular, he exercised the degree of care required of him. *Stryker v. Hastie*, 131 Or 282, 282 P 1087.

"* * *. Whether, under the circumstances shown by the testimony, defendant had the right of way or, if having it, he was justified in the absolute exercise of it were all questions of fact for the jury and whether, under the circumstances stated, plaintiff's conduct in not looking to her right after entering the intersection, and after having observed there was no car coming from her right within 200 feet or more, was negligence upon her part was a question for the jury to be determined under the rule that persons driving across street intersections must exercise such reasonable precautions for their own safety as ordinarily prudent persons would exercise under the same circumstances. * * * Therefore, whether plaintiff, having looked once to the right after entering the intersection and failing to look in that direction again, was negligent depends entirely upon the circumstances existing at the time and not upon any fixed, inflexible rule of law applicable to all cases and under all circumstances." 131 Or at p 286.

The Stryker case also answers other arguments advanced by defendant as to right of way and the number of times a party may be required to look. The rules stated and their application to this case are so obvious that we find no occasion to point them out to the defendant.

■ Defendant's third assignment claims error for the failure of the court to remove from the jury's consideration an issue concerning plaintiff's injury and damage. In his complaint plaintiff alleged that he sustained "brain concussion and bruising and laceration of the brain." Defendant contends there was no evidence to sustain any "bruising" or "laceration" of any part of the brain. The trial court refused defendant's motion to remove that allegation from the jury's consideration.

Plaintiff's attending physician testified:

"* * * he was rigid, his neck rigid, and back, unconscious, and in a position which makes a doctor think of injury to the base of the brain or fracture of the base of the skull, or both, which was later proved by finding blood in the spinal fluid. * * * He can't help that because everything is rigid, his back, his neck, and probably some of it could be the result of the brain injury in the first place due to either the fracture of the bottom of the brain— I mean the fracture of the bottom of the skull—or injury to the bottom of the brain, or both, I couldn't conceive anybody not having an injury to the brain when he has an injury at the base—I mean a fracture of the base of the skull. It is almost impossible to get a fracture there without injury to the brain and that was proved, as I said before, by finding the blood in the spinal fluid."

In the face of such testimony it is apparent that traumatic injury at the base of the skull as severe as

that described by the doctor would tear, cut or lacerate the tissue within and certainly bruise it. We know of no other way to describe traumatic injury to human tissue other than the words "bruise" or "lacerate" or by synonymous words. Medical science confirms our conclusions. Vol VI, The Cyclopedia of Medicine, Surgery & Specialties, F. A. Davis Co., p 75 et seq; The Head: A Law-Medicine problem (1st ed), Western Reserve University, p 93 et seq.

This assignment is likewise without merit. The judgment is affirmed.