**COLUMBIA HELICOPTERS, INC., a corporation, and Marvin E. Lematta, Plaintiffs-Appellees,**

v.

**TRANSPORT INDEMNITY CO., a corporation, Defendant-Appellant.**

No. 24794.

United States Court of Appeals, Ninth Circuit.

July 21, 1970.

Patent No. 2,180,795, dated November 21, 1939.

Thomas M. Triplett (argued), of Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant-appellant.

Jonathan A. Ater (argued), Wm. H. Poole, of Lindsay, Nahstoll, Hart, Dafoe & Krause, Portland, Or., for plaintiffs-appellees.

Before CHAMBERS and WRIGHT, Circuit Judges, and BOLDT, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

On May 22, 1964, a helicopter crashed outside of Bishop, California. The pilot, Marvin E. Lematta, vice-president of appellee Columbia Helicopters, Inc. (Columbia), was severely injured and the only passenger, R. R. DeFoor, president of R. R. DeFoor Transportation Co., Inc., the owner of the helicopter, was killed.[1] The helicopter, which is the subject matter of this litigation was destroyed.

On April 28, 1967, DeFoor Transportation, Inc., and its insurer filed suit in the Oregon courts against Lematta and Columbia for the loss of the helicopter. As amended, the complaint alleged that Lematta, while acting within the scope of his employment for Columbia, had been negligent in piloting the helicopter,

---

* The Honorable George H. Boldt, United States District Judge, Western District of Washington, sitting by designation.

1. A wrongful death action by the executrix of the estate of R. R. DeFoor against Columbia and Lematta resulted in a verdict for the estate. Transport Indemnity defended the action and paid the judgment on behalf of Columbia and Lematta.

which negligence was the proximate cause of its destruction.

Columbia tendered the defense to its insurer, Transport Indemnity Co., appellant herein. The tender was refused on the ground that at the time of the crash the helicopter was "in charge of the insured" through its employee, Lematta, and therefore specifically excepted from coverage. A default judgment was eventually entered against Columbia and Lematta and Columbia commenced this diversity action against Transport to recover under the policy.

The district court entered judgment for Columbia and this appeal followed. We reverse, holding that the damage to the helicopter was not covered under the terms of the insurance agreement.

Columbia is in the business of selling, chartering and servicing helicopters. The insurance agreement between Columbia and Transport was a basic liability policy covering both personal injury and property damage for which the insured, Columbia, became legally obligated to pay. An endorsement provided coverage for damages to or caused by specified helicopters owned by the insured and a second endorsement provided similar coverage for damage to property of others, including goods sold after title had passed to the buyer, "except aircraft in flight in charge of the insured * * *"

The parties agree that the basic issue is whether Columbia, through Lematta, was "in charge of" the helicopter at the time of the accident.

The agreed facts are these:

In March 1964, Columbia sold a helicopter to DeFoor Transportation, delivery and acceptance to be made at the Hughes Tool Company in Culver City, California. Shortly before the anticipated delivery date, Lematta and other representatives of Columbia met with DeFoor and made arrangements for transporting the helicopter from Culver City to Springfield, Oregon, where DeFoor had his office. DeFoor was inexperienced in flying helicopters and it was agreed that Lematta would fly the aircraft to Springfield with a stopover at DeFoor's ranch in Nevada. DeFoor agreed to pay for Lematta's time, food and housing on the trip.

On May 21, 1964, Lematta met DeFoor in Culver City and DeFoor accepted delivery of the helicopter at the Hughes plant. The next day Lematta and DeFoor left as scheduled, stopping at Bishop, California, to refuel. Near Bishop, DeFoor decided he wished to view Lake Crowley, which required a deviation from the flight plan to DeFoor's Nevada ranch. The accident occurred on the way to the lake.

Columbia contends that it was not "in charge of" the helicopter at the time of the crash because DeFoor had "general control" of it, as distinguished from Lematta's "mechanical control" as pilot.

Under Oregon law exemption for property "in charge of" the insured must be given a literal interpretation as that phrase has been held to be clear and unambiguous. Clark Motor Co. v. United Pacific Ins. Co., 172 Or. 145, 139 P.2d 570, 572 (1943). Those words require more than mere physical possession of another's property and connote the placing of a degree of responsibility in the insured by the owner. Christ v. Potomac Ins. Co., 243 Or. 254, 413 P.2d 407, 411 (1966); Klock v. Allstate Ins. Co., 34 Misc.2d 990, 230 N.Y.S.2d 555 (1962), and cases cited therein. The question, therefore, is what type of responsibility —mechanical or general—is required to constitute "in charge of" where, as here, two persons are entrusted with two distinct types of control?

No cases have been called to our attention dealing with this specific question. Columbia attempts to analogize from cases applying the borrowed servant doctrine where the borrowing employer has been held liable for the acts of an employee where he borrows both the employee and a machine. However,

in each of those cases [2] the act of negligence was an act over which the borrowing employer had the ability to control. Here, DeFoor had no knowledge or ability to control the mechanical operation of the helicopter. Moreover, unlike the cases cited by Columbia, we are not dealing with an innocent plaintiff seeking to recover for injuries suffered through a person who is fortuitously the general employee of someone other than the defendant.

Essentially we must determine what the parties intended by the phrase "aircraft in flight in charge of the insured." In this regard we note that under federal regulations the pilot "is directly responsible for, and is the final authority as to the operation of the aircraft," (14 C.F.R. § 91.3a), thereby making it likely that the parties were referring to the pilot when they adopted the phrase in question. Moreover, the insuring agreement was limited to property "of others" in charge of the insured. Hence, if the exception for property "in charge of" the insured is to be given any meaning, it must mean something other than the general control which ownership itself provides. We conclude that the exception refers to possession coupled with mechanical control.

We find support for our conclusion in the recent case of Ferguson v. Birmingham Fire Ins. Co., Or., 460 P.2d 342 (1969). There the Oregon Supreme Court, instead of focusing on a literal construction of a "care, custody or control" exclusion, examined the purported reasons behind the exclusion. One reason was termed the "adverse selection of risks," the exclusion being adopted in general liability policies to permit a special policy to be issued at an appropriate price to an insured with special risks common to its business. A second purpose was the "moral hazard" involved when property of another is entrusted to the insured, the theory being that the insured "feels morally responsible for any damage caused by him and is more interested in seeing the owner is generously compensated by his company." *Id.,* 460 P.2d at 345, quoting from Gowan, "Provisions of Automobile and Liability Insurance Contracts," 30 Ins.Coun.J. 96 (Jan. 1963).

Both of these purposes would seem to favor application of the exclusion in the case at hand. Columbia's business of selling and servicing helicopters would certainly warrant payment of a special premium when they are "in flight in charge of the insured," due to the special risks involved. And where, as here, the damage is caused by the negligent operation of Columbia's employee, the moral hazard rationale is present.

Columbia also argues that Lematta was, in fact, the borrowed servant of DeFoor Transportation. Of course, if this were literally true, Columbia would no longer be liable for his torts. But Columbia, by arguing that under Section 226, Restatement (Second), Agency, a servant may be acting for two masters, attempts to walk a narrow line between application and non-application of the borrowed servant doctrine. However, we are unable to bring this case into any of the special circumstances referred to in Section 226, no common enterprise existing between the two employers and, as we have found, no common control over the act which resulted in damage for which redress is sought. See Hopfer v. Staudt, 207 Or. 487, 298 P.2d 186, 193 (1956).

In view of our disposition of this portion of the appeal, the action must be dismissed and we need not consider appellant's remaining assignments of error.

Reversed.

2. McCollum v. Smith, 339 F.2d 348 (9th Cir. 1964); Safeway Trails, Inc. v. Allentown & Reading Transit Co., 185 F.2d 918 (4th Cir. 1950); Hopfer v. Staudt, 207 Or. 487, 298 P.2d 186 (1956); McFarland v. Dixie Machinery & Equip. Co., 348 Mo. 341, 153 S.W.2d 67 (1941).